L. M. MACON v. MISS E. M. MURRAY, JOHN and SAM MURRAY.

(Filed 19 November, 1952.)

**1. Judgments § 33c—Dismissal on ground that action was prematurely instituted does not bar subsequent action after cause has matured.**

An action to recover for cutting and stacking lumber was dismissed on the ground that although plaintiff was entitled to a stipulated sum therefor, such amount was not recoverable under the contract until the lumber had been sold, and that defendant had not arbitrarily neglected or refused to sell the lumber, and that plaintiff was not entitled to a lien on the lumber. The judgment directed that defendants were under legal duty to use due diligence to sell the remaining lumber. *Held:* The judgment does not estop plaintiff from maintaining a subsequent action for the balance due him upon his contentions that subsequent to the judgment defendant failed to use due diligence to sell the lumber but had arbitrarily and unreasonably neglected to sell same.

**2. Appeal and Error § 39f—**

Exceptions to the charge will not be sustained when the charge construed contextually is without prejudicial error.

APPEAL by defendants from *Clement, J.,* at March Civil Term, 1952, of RANDOLPH.

Civil action to recover on contract for services in cutting, logging and manufacturing timber into lumber, and in stacking lumber thus manufactured.

Plaintiff alleges in his complaint substantially the following: That on or about 20 December, 1947, he entered into a contract with defendants by the terms of which he agreed to move his sawmill onto the lands of defendants and to cut, log and saw into lumber certain timber trees on the lands of defendants; that he was to be paid at the rate of $25.00 per thousand board feet for his services in cutting, logging and sawing the timber trees into lumber; that if he stacked any of the lumber he was to be paid therefor an additional $2.00 per thousand board feet; that pursuant to this agreement, he moved his sawmill on the land of the defendants and cut, logged and manufactured into lumber 307,740 board feet of lumber, and stacked 212,029 board feet of lumber for the defendants; that he completed his work for defendants on or about 26 May, 1948,—having fully complied with the terms of his contract and agreement with defendants; that during the period between 20 December, 1947, and 26 May, 1948, defendants paid him the sum of $3,796.54; and that there is now due him the full sum of $4,321.02, plus interest from 26 May, 1948, after demand upon defendants, and payment thereof refused by them.

On the other hand, defendants, repleading by way of answer by permission of the court, deny in material aspect the allegations of plaintiff's

complaint, except as to the amount paid by them to plaintiff, which they admit.

And for a further answer, and new matter in defense, defendants aver in substance: That in an action instituted by plaintiff, on 26 June, 1948, against these defendants in same court, upon same cause of action, and for similar relief, judgment was rendered dismissing the action; the judgment roll in which is pleaded in bar of this action; and that a claim of lien filed was dismissed; and that the judgment in such former action has not been vacated, nor has it been reversed.

And further answering the complaint, and as a counterclaim, aver and say: That plaintiff and defendants made and entered into an express contract as set out in the judgment specially pleaded above; that they, the defendants, performed their part of the contract,—going to considerable trouble, and spending considerable time and money; that plaintiff violated his part of the contract in that he made demands for immediate payment for his services, instituted the former action, filed a claim of lien in office of Clerk of Superior Court of Randolph County, and posted copies of same on the lumber and on the lands of defendants, thereby adversely and materially impairing defendants' ability to sell the lumber; that they were at all times ready, willing, and able to comply with the terms of said contract, and negotiations were carried on in good faith by them looking to the sale of the lumber, and completed sales would have been made of all the lumber in a reasonable time, and at reasonable prices, had not the aforesaid acts and violations of plaintiff prevented the same; that lumber left in the woods sustained material damages from the ravages of the elements; that the element of time in the contract, and in selling the lumber was essential, and was so contemplated by the parties; and that "by reason of the reckless and willful material breach of the said contract by the plaintiff, defendants have suffered loss and damage." While no specific amount of damages is alleged, defendants pray that plaintiff take nothing by this action, and that they recover of plaintiff $12,822.98, etc.

When the case came on for hearing in Superior Court at March Term the parties entered into stipulations, pertinent parts of which are as follows: "That a suit was instituted on June 25, 1948 in the Superior Court of Randolph County, and was referred to a referee. The referee made his report, the defendants filed exceptions to the report, the exceptions came on to be heard before Crisp, Judge, who approved the findings of fact and conclusions of law of the referee, the defendants appealed to the Supreme Court from the judgment of Crisp, and the Supreme Court remanded the action for a new hearing" (Macon v. Murray, 231 N.C. 61, 55 S.E. 2d 807); that when "The matter came on to be heard at the March 20 Term, 1950, before his Honor William H. Bobbitt, Judge Pre-

siding, and Judge Bobbitt entered judgment bearing date of March 29, 1950, as appears on the judgment docket of this county," in which the Judge made findings of fact as follows: "That the agreement was that the defendants were to pay the plaintiff the amount due him upon the sale of the lumber by the defendants . . . that it was contemplated and agreed that the defendants would sell the lumber as soon as this could reasonably be done, taking into consideration winter weather, difficulties of hauling, illness in the family of the defendants, and all attendant circumstances"; that "Between December 20, 1947, and May 26, 1948, as weather conditions permitted, the plaintiff cut, logged and sawed the timber. The plaintiff completed the sawing and stacking operations on the defendants' lands about the 25th day of May, 1948. Under the terms of the above contract the plaintiff cut and sawed 307,740 board feet of the defendants' timber and stacked 212,029 board feet."

That "the plaintiff is an experienced lumber and saw mill man and the lumber cut by him on the Murray place was well processed and was good lumber, and when available for sale, and when hauling facilities could be provided, there was a market for such lumber from time to time at reasonable prices."

"It is further agreed between the parties that the facts found by Judge Bobbitt in paragraph 6 are admitted, which paragraph reads as follows: 'Weather conditions in the early part of 1948, January, February and March, were bad, and the roads on the Murray lands over which the lumber had to be hauled were muddy, rough and in bad shape; that conditions improved somewhat during April, May and June; that during part of this period the roads were impassable and during the greater portion thereof hauling would have been difficult although not impossible. During the period and until June 26, 1948, the defendants made reasonable efforts to sell the lumber that was available from time to time at reasonable prices and in fact sold a substantial portion thereof. The defendants did not arbitrarily refuse to sell the lumber at reasonable prices when such was available and hauling could reasonably be arranged, and did not arbitrarily and unreasonably prolong negotiations so as to delay sales. Negotiations were carried on in good faith by the defendants looking to the sale of the remaining lumber within a reasonable time until on or about June 26, 1948, when the action was commenced, notice of lien filed against the defendants' lands and notices of claim of lien posted on the stacked and unsold portion of the lumber. Since then the outstanding lien notices and the pending litigation have substantially impaired the defendants' ability to sell the remaining lumber at reasonable prices. Since then certain amounts of lumber, not disclosed by the evidence, have been sold by the defendants. The evidence fails to show what amounts of

lumber were available for sale during the different months or periods between December 20, 1947 and May 26, 1948.'

"It is agreed by the parties that the facts stated in paragraph 7 of said findings of fact as set forth in said judgment are true, and are as follows: 'The total amount due and to become due by the defendants to the plaintiff for his services under the contract is $8,117.56, of which $3,806.34 has been paid, leaving $4,311.22 due or to become due. The evidence fails to disclose the amount of lumber sold by the defendants up to now. The payments made by the defendants to the plaintiff were not made strictly in proportion to the amount of lumber actually sold, but certain payments were made to enable the plaintiff to meet his day labor payroll.' "

" 'Upon the foregoing findings of fact, the court is of the opinion and so holds: (1) That the plaintiff has no lien on the defendants' lands or any of the unsold stacked lumber; (2) that the evidence fails to show that the defendants have sold lumber for which the amounts due plaintiff for logging and stacking have not been paid; (3) that the defendants' ability to sell the unsold and stacked lumber has been adversely and materially impaired by the lien notices and under such circumstances since June 26, 1948, the defendants' obligation to sell has been suspended; and (4) that from the final judicial determination of this action the defendants are under legal duty to use due diligence to sell the remaining lumber without arbitrary and unreasonable delay, and thereupon to pay the plaintiff the amounts due under the above contract as well as the amount, if any, due by the defendants to the plaintiff on account of lumber heretofore sold by the defendants for which plaintiff has not received compensation in accordance with the terms of the contract.'

"That Judge Bobbitt further set forth in said judgment the following: 'Accordingly, it is now ordered, adjudged and decreed that the plaintiff have and recover nothing in this action on account of the matters alleged in the complaint and that this action be, and the same is hereby dismissed.'

"It is further agreed between the parties that after Bobbitt, Judge, signed the judgment above referred to, dated March 29, 1950, that the defendants gave notice of appeal to the Supreme Court of North Carolina, but did not perfect their appeal. That on January 15, 1951, the plaintiff started the present action."

Upon the trial of the present action in Superior Court these stipulations were read in evidence to the jury, and plaintiff offered evidence tending to show that since the last of March, 1950, there has been a market for lumber; that the lumber business has been good, and that defendants have refused to sell lumber at the prevailing market prices; that they have failed to exercise due diligence to sell this lumber; that their conduct in respect thereto has been arbitrary and unreasonable.

Defendants, on the other hand, offered evidence tending to show that they have made reasonable effort to sell the lumber, but have been unable to do so; that their failure to sell the lumber is due to violations by plaintiff as alleged in their answer, to their damage.

And the trial judge, in his charge to the jury, submitted the case on the basis of these contentions.

These issues were submitted, and answered by the jury as shown:

"1. Did the plaintiff and the defendants enter into a contract on December 20, 1947, that the plaintiff would cut certain lumber of the defendants and receive therefor the sum of $25.00 per thousand feet and $2.00 per thousand feet for stacking? Answer: Yes.

"2. What amount, if any, is the plaintiff entitled to recover of the defendants? Answer: $4,311.22. No interest.

"3. Did the plaintiff breach the contract as alleged in the answer? Answer: No.

"4. What amount, if any is the defendant entitled to recover of the plaintiff on account of the breach of the contract by the plaintiff? Answer:    .... .....'"

To the signing of judgment thereon, and in accordance therewith, defendants excepted and appealed to the Supreme Court, and assign error.

*L. T. Hammond and Prevette & Coltrane for plaintiff, appellee.*
*John L. Murray for defendants, appellants.*

WINBORNE, J. While defendants, appellants, bring forward and discuss in their brief filed on this appeal numerous assignments of error, we are of opinion and hold that prejudicial error is not made to appear.

First: Appellants contend that the trial court erred in denying defendants' motion to dismiss this action "for that the judgment and record in the former action constitute *res judicata,* and the plaintiff is thereby estopped from maintaining this action."

Though the judgment referred to dismissed the former action, the findings of fact and the conclusions of law based thereon as set out in the judgment, clearly show that the door was left open for the plaintiff to enforce his rights as to balance "due or to become due." The effect of the judgment is that the action was prematurely instituted, that is, before the debt was due. And it is significant that the court concludes "that from the final judicial determination of this action the defendants are under legal duty to use due diligence to sell the remaining lumber without arbitrary and unreasonable delay, and thereupon to pay the plaintiff the amounts due under the above contract as well as the amount, if any, due by the defendants to the plaintiff on account of lumber heretofore sold by the defendants for which plaintiff has not received compensation in

accordance with the terms of the contract." Manifestly, the judgment does not estop plaintiff from prosecuting the present action.

Second: The charge as given by the court is subjected to varied criticism—both as to statement of contentions and as to declarations of applicable principles of law. Nevertheless, when the charge is read contextually in the light of stipulated facts, and evidence offered by plaintiff and by defendants, any error there may be is deemed harmless.

Third: The assignments of error based upon alleged failure of the court to charge as required by G.S. 1-180 in respect to numerous matters appear to be without merit.

The case appears to have been fairly presented to the jury, and the jury has accepted plaintiff's view.

Hence, after consideration of all assignments of error presented, we find in the judgment from which this appeal is taken

No error.